UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE L.[1],

                                      Plaintiff,      19-CV-1051-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

## INTRODUCTION

On October 21, 2014, Plaintiff filed an application for supplemental security income ("SSI") and an application for disability insurance benefits ("DIB"), alleging disability beginning on January 2, 2005. Tr.[2] at 248-60. After the applications were initially denied, Plaintiff timely requested a hearing. Tr. 180-82. On February 24, 2017, Plaintiff appeared by video with her attorney, Andrew Spong, Esq., and testified before Administrative Law Judge Andrew Soltes, Jr. ("the ALJ"). Tr. 41-92, 107-10. A Vocational Expert ("VE"), Cherie Plante, also testified at the hearing. Tr. 93-107. The ALJ issued an unfavorable decision on August 15, 2017. Tr. 15-23. Plaintiff then requested review by the Appeals Council, which the Council denied on June 10, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Subsequently, Plaintiff brought this action pursuant to Title II and Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied her applications for SSI and DIB.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 6.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

1

on the pleadings. ECF Nos. 12, 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion for judgment on the pleadings is DENIED, and the matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[4] If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the SSA through June 30, 2011. Tr. 17. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 2, 2005. *Id.* At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: mood disorder, bipolar disorder, panic disorder, obsessive-compulsive disorder, anxiety, depression, posterior disc protrusion/central herniation, mild degenerative/osteoarthritis changes in the patella, and shoulder impingement. *Id.* The ALJ did not identify any non-severe impairments.

At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 18. The ALJ then proceeded to determine that Plaintiff retained the RFC to perform a full range of light work defined by the regulations, except that she was able to perform frequent climbing of ramps and stairs, frequent stooping, kneeling, crouching, crawling, using foot controls bilaterally, and reaching bilaterally in all directions, but was not able to climb stairs, ladders, ropes, or scaffolds. *Id.* The ALJ also determined that Plaintiff could perform simple, routine, and repetitive tasks with few to no production requirements, make basic work related decisions, interact frequently with the public, co-workers, and supervisors, and be off task 10-15% of the eight-hour work day. *Id.*

At Step Four of the sequential analysis, the ALJ found that Plaintiff could not perform any past relevant work, after which he proceeded to Step Five, where he determined that there were jobs available in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 21-22. Specifically, the ALJ found that Plaintiff could work as a cashier II, fast food worker, and cleaner (housekeeping). Tr. 22.

**II.      Analysis**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion of her treating psychiatrist and obtain her mental health records, which resulted in the RFC determination that was not supported by substantial evidence. ECF No. 12-1 at 16-27.

"[T]he treating physician rule[5] generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). Even though the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where it is not consistent with other substantial evidence contained in the record. *Halloran*, 362 F.3d at 32. (internal citations omitted).

When the ALJ does not afford controlling weight to the medical opinion of a treating physician, he must comprehensively consider several factors, the so-called "*Burgess* factors," and set forth the reasons for the weight assigned to the treating physician. *Id*. "Under *Burgess*, the ALJ must (1) decide whether a treating physician's medical opinion merits 'controlling weight' and, (2) if it does not, then 'determine how much weight, if any, to give it' based on certain factors such as length of treatment and type of health care provider[.]" *Curry v. Comm'r of Soc. Sec.*, --- F. App'x ---, 2021 WL 1942331, *2 (2d Cir. 2021) (internal citations omitted). The ALJ's

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844. Because Plaintiff's applications were filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of her applications.

5

"[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). However, remand is not required where the application of the correct legal principles to the record could lead only to the same conclusion. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (if a review of the record assures the court "that the substance of the treating physician rule was not traversed," *i.e.*, if the record provides "good reasons" for assigning less than controlling weight to it, the ALJ's decision should be affirmed).

In the present case, the only opinion of record that identified Plaintiff's mental limitations was the opinion of Dr. Hurley, Plaintiff's treating psychiatrist, which the ALJ afforded "some weight." Tr. 21. The ALJ recognized that the opinion identified significant limitations in Plaintiff's mental functioning, however, he determined that the severity of her limitations was not supported by treatment records received from Horizon Health Services. *Id.*

Having assigned less than controlling weight to Dr. Hurley's opinion, the ALJ was next required to provide "good reasons" and explain why he chose to only assign "some weight" to Dr. Hurley's opinion. *See Burgess*, 537 F.3d at 129. While the Court recognizes that generally a "slavish recitation of each and every factor" is not necessary "where the ALJ's reasoning and adherence to the regulation are clear," *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order), no such clarity exists here where the ALJ's analysis of Dr. Hurley's opinion included a one-sentence conclusory statement about the inconsistence of Dr. Hurley's opinion to the records received from Horizon Health Services. Tr. 21. In fact, the ALJ's analysis neither contains a discussion about the length and nature of Plaintiff's treatment relationship with Dr. Hurley or the frequency of his examinations, nor does it contain a comprehensive analysis of the consistency of the opinion to the record as a whole. *See Morgan v. Colvin*, 592 F. App'x 49, 50

(2d Cir. 2015) (summary order) ("[T]he ALJ's conclusory, one-sentence explanation for his decision to reject [the treating physician's] opinion did not fulfill his obligation to provide[ ] good reasons for the weight given to that opinion.") (internal citations and quotations omitted); *see also Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order) ("[M]erely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.' This is particularly true where . . . the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans.")

Aside from briefly mentioning the inconsistency between the records from Horizon Health Services and Dr. Hurley's opinion, the ALJ's opinion did not reference any specific evidence in records to support this conclusion. This was an improper analysis of the evidence in the record required when he weighed the opinion evidence. *See Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order) (contradictions in the record cannot be resolved arbitrarily and the ALJ's remarks that the opinion of plaintiff's treating physician was not consistent with the record does not satisfy the ALJ's duty to provide "good reasons" for rejecting a treating physician's opinion).

The ALJ's proper consideration of Dr. Harley's opinion was particularly important to Plaintiff's disability claims for several reasons. First, Dr. Hurley was Plaintiff's treating psychiatrist of record, who continuously treated her for several years, and who was the only treating source who opined regarding the severity and functional limitations of Plaintiff's mental impairments. Tr. 82. In his February 6, 2017 opinion, Dr. Hurley diagnosed Plaintiff with bipolar disorder, PTSD, ADHD, OCD, social anxiety disorder, depression, chronic pain, and kleptomania. Tr. 821. He identified a plethora of signs and symptoms that included impaired impulse control,

illogical thinking, persistent anxiety, disturbances of mood or affect, recurrent and intrusive recollections of a traumatic experience, manic and bipolar syndromes, easy distractibility, severe panic attacks, recurrent obsessions and compulsions, intense and unstable interpersonal relationships, impulsive and damaging behavior, emotional withdrawal, and others. Tr. 822. Dr. Hurley further opined that Plaintiff could not complete a normal workday without interruptions from psychologically based symptoms. Tr. 823. He also indicated that Plaintiff could not perform the majority of activities required in a work setting independently, appropriately, and effectively, such as remembering work-like procedures, maintaining regular attendance and punctuality, sustaining an ordinary routine without special supervision, working in coordination and proximity to others, performing at a consistent pace, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers, responding appropriately to changes in a work setting, understanding, remembering and carrying out detailed instructions, dealing with stress, and interacting appropriately with the general public. Tr. 823-24. Lastly, Dr. Hurley opined that Plaintiff was seriously limited in her ability to maintain attention for two-hour segments, and that due to her mental limitations, she would be absent from work more than four days per month. Tr. 826.

Contrary to the ALJ's conclusion, these findings were consistent with Plaintiff's treatment records received from Horizon Health Services, as well as examinations by Plaintiff's primary treating physician Dr. Jordan, all of which demonstrate that even though Plaintiff often appeared well-groomed, with appropriate affect and behavior, normal speech, and intact memory during her examinations, she, nonetheless, was consistently diagnosed with having a bipolar, borderline personality, generalized anxiety and social anxiety disorders, as well as ADHD, PTSD, OCD, and kleptomania. Tr. 367-85, 392-06, 752-05, 837, 846-48, 852-53, 856-57. Plaintiff frequently had

dysphoric mood and thoughts of hurting herself, struggled with mood and sleep, and reported being depressed, having poor concentration, excessive worry, loss of pleasure, mood swings, panic and anxiety attacks, insomnia, agoraphobia, OCD, PTSD, and binge eating. *Id.* Despite appearing appropriate behavior during her examinations, Plaintiff continuously was prescribed a variety of psychotropic medications to treat her bipolar disorder, depression, ADHD, as well as the other anxiety impairments that often caused her severe side effects. Tr. 371-06, 768-93. Consistent with Dr. Hurley's findings, the record also supports Plaintiff's impaired abilities in making appropriate decisions and interacting appropriately with others. In fact, she enjoyed "challenging security systems," could not keep a job for longer than eight months due to her inappropriate behavior with coworkers and stealing from the employer, and was incarcerated for three years for theft from a grocery store. Tr. 376, 730, 767, 789. She reported staying in bed all day because of the fear of being judged or criticized by others, or engaged in intense exercise and diet with the only goal to appear more desirable to others. Tr. 774, 796.

Not only did the ALJ fail to discuss the nature of Plaintiff's relationships with Dr. Hurley and analyze his findings against the other evidence on the record, he also completely ignored the extreme limitations in Plaintiff's ability to perform work on a sustained basis, her level of absenteeism, inability to perform at a consistent pace, make appropriate decisions, accept instructions, respond to criticism, and get along with co-workers and the public and failed to include them in his RFC analysis. This error was not harmless particularly in light of testimony provided by the VE, who testified that more than one unexcused absence per month would not be tolerated by an employer. Tr. 106. Considering Dr. Hurley's determination that Plaintiff's mental limitations would result in her missing more than four days of work, the ALJ's proper consideration of Dr. Hurley's opinion was crucial to the outcome of Plaintiff's disability case. *See*

9


*Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) (the ALJ's failure to provide adequate reasons for rejecting the opinion of plaintiff's treating physician was not harmless in light of a VE's testimony that no jobs would be available for an individual who had to miss four or more days of work per month).

It should be also noted that the Commissioner's attempt to justify the ALJ's RFC findings and the reasons for the less-than controlling weight that the ALJ assigned to Dr. Hurley was not a proper substitute for the ALJ's analysis, and is exactly the type of *post hoc* rationalization that is not accepted by the Court. ECF No. 16 at 17-18. While the evidence that the Commissioner offers may have supported the ALJ's conclusions that Dr. Hurley's opinion should receive "some weight," the Court is not permitted to accept the Commissioner's *post hoc* rationalization for the ALJ's determination. *Snell*, 177 F.3d at 134 ("[A]rguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation.").

In sum, because the ALJ's decision does not include an explicit consideration of the *Burgess* factors and an explanations of the reasons for the weight he assigned to Dr. Hurley's opinion, the Court's review of whether Plaintiff's RFC is supported by substantial evidence has been frustrated. *Ferraro*, 806 F. App'x 13, 15 (2d Cir. 2020). Therefore, the matter should be remanded to the Commissioner for further proceedings and proper consideration of Dr. Hurley's opinion. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (failure to satisfy the treating physician rule "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is DENIED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: May 21, 2021
       Rochester, New York

 

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court